IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARGONAUT INSURANCE COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>H&G PAVING CONTRACTORS, INC.; ET AL,<br><br>Defendants,<br><br>v.<br><br>H&G PAVING CONTRACTORS, INC.; ET AL,<br>Counter Claimants,<br>v.<br><br>ARGONAUT INSURANCE COMPANY,<br><br>Counter Defendant. | Case No. 24-CV-244-RAW |

# ORDER

Before the court is the Plaintiff Argonaut Insurance Company's ("Argonaut") Motion to Dismiss Defendants H&G Paving Contractors, Inc. ("H&G"), Glover & Associates, Inc. ("Glover &Associates"), CTG Properties, LLC ("CTG"), Craig Glover, Angela Glover, Greg Hornbuckle,

1

and Regan Hornbuckle's (collectively, the "Indemnitors") Counterclaims Pursuant to Rule 12 (b) (6) [Dkt. No. 44]. For the foregoing reasons the Motion is GRANTED in part and DENIED in part.

This case arises out of an indemnity agreement pertaining to surety bonds for a road construction project between Plaintiff, Argonaut Insurance Company, and the Defendants (also the Indemnitors) who are individuals and business entities based in Oklahoma. Argonaut issued surety bonds on behalf of the Defendants for multiple construction projects in Oklahoma. Dkt. No. 2 at 4. The Indemnity Agreement provided that the Defendants/ Indemnitors would reimburse Argonaut for claims against these bonds. Argonaut alleges that after H&G, a construction company that is a Defendant in this case, defaulted on several projects, multiple claims were made on the Bonds and Argonaut incurred damages resolving said claims. Indemnitor Defendants then failed to deposit the required collateral for these losses as required by the Indemnity Agreement. After trying to resolve the conflict, Argonaut filed the present lawsuit. In response, the Indemnitor Defendants filed counterclaims asserting that Argonaut breached its agreement by failing to properly investigate claims made on the bonds as required by the Indemnity Agreement. Dkt. No. 38. Defendants contend that Argonaut paid claims where there was no default by H&G and that Argonaut failed to adequately investigate these claims. The Indemnitors claim that instead of only paying claims that were due, that Argonaut paid claims without proper investigation thus violating Indemnity Agreement. Therefore, the Indemnitors asserted counter claims for breach of contract and bad faith. Dkt No. 38 at 7.

Plaintiff Argonaut moves to dismiss the counterclaims arguing that the Indemnitors' bad faith claim is barred under applicable law, that Argonaut owes no duty to the Indemnitors which it could have breached under the Indemnity agreement or Bonds, and that under the agreement the

Indemnitors agreed to Argonaut resolving claims against the Bonds as it deems appropriate. [Dkt. No. 45 at 1-2].

## **Legal Standard**

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted); see also *Robbins* v. *Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In a case against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Robbins*, 519 F.3d at 1250 (emphasis in original). Otherwise, the complaint would fail to provide fair notice and to present a plausible right to relief.

The Tenth Circuit has held that the "*Twombly/Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Khalik* v. *United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Robbins* v. *Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "In other words, Rule 8(a)(2) still lives." *Id*. (emphasis added). "Under Rule 8, specific facts are not necessary; the statement

need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Burnett* v. *Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting *Khalik*, 671 F.3d at 1191) (emphasis added).

For purposes of the motion to dismiss, the court accepts as true all well-pleaded facts in the Amended Complaint and construes those facts in the light most favorable to Plaintiffs. *Western Watersheds Project* v. *Michael*, 869 F.3d 1189, 1193 (10th Cir. 2017). Of course, the court does not accept as true conclusory statements or legal conclusions. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)). To survive the motion to dismiss, the Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs must nudge their "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## Analysis

First, Plaintiff Argonaut contends that the Defendant's counterclaim for bad faith must fail as a matter of law because the choice of law provision in the subject contract requires it's interpretation pursuant to Texas law which does not recognize a cause of action for bad faith in the context of sureties. The relevant surety contract is attached to the Complaint as an exhibit, and thus part of the complaint itself for the purposes of a motion to dismiss. The choice of law provision states

> Choice of law: This Agreement shall be interpreted under the substantive law of the State of Texas, without giving effect to its choice of law principles.

Indemnity Agreement (Dkt. No. 2-1, paragraph 27).

The Defendants contend that we should not enforce the relevant choice of law provision because doing so would violate Oklahoma's stated public policy and that Texas has no substantial relationship to the parties or the contract.

A federal court must apply the conflict of law rules of the state in which it sits. *Klaxon Co*. v. *Stenor Electric Mfg. Co*., 313 U.S. 487, 496-97 (1941). This is true even when choice of law determination involves an interpretation of contract provisions. *Shearson* v. *Lehman Bros. Inc. v. M&L Invs*., 10 F.3d 1510, 1514 (10th Cir. 1993). Under Oklahoma law, "it is well established that Oklahoma will enforce the choice of law provision in a contract." *Ross Grp. Constr. Corp*. v. *RCO Constr., LLC*, 2022 WL 3104775, at *3 (N.D. Okla. Aug. 4, 2022). Oklahoma courts will "not interfere with the contract of the parties absent fraud, duress, undue influence, or mistaken and that courts are interested only with the legality of the contract. *Fossil Creek Energy Corp*. v. *Cook's Oilfield Servs*., 2010 OK CIV APP 123, ¶ 12, 242 P.3d 537, 542, as corrected on reh'g (Aug. 4, 2010). In the present case, the Defendants do not allege any fraud, duress, or undue influence and do not provide any support for their contention that the differences between Texas and Oklahoma bad faith laws render the choice of law provision unenforceable. Therefore, consistent with Oklahoma law, the court will enforce the choice of law provision and apply Texas substantive law.

### **Bad Faith**

Texas law does not recognize a bad faith cause of action for a surety's failure to promptly pay a claim. In *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415, 416–17 (Tex.1995), the Texas Supreme Court specifically held that "there is no common law duty of good faith and fair dealing between [a] surety and [a] bond obligee. Under Texas Law, suretyship is not treated like insurance and is not covered by the Texas insurance code. *Id*. at 428. Therefore, the

Plaintiff's motion to dismiss counterclaims is GRANTED in part, pertaining to the counterclaim for bad faith.

### Defendants Breach of Contract Counterclaims
### Cannot be Dismissed as a Matter of Law

Argonaut argues that because the Indemnity Agreement was a unilateral contract, it owed no duty to the Defendants. Therefore, Argonaut concludes that any claim for breach of contract under the Indemnity Agreement must be dismissed as a matter of law. The court disagrees. Under Texas law, by accepting the Indemnitors' offer through performance, Argonaut formed a binding contract and thus this argument fails. *Stavron* v. *Suretec Ins Co.*, 2019 WL 676812 (Tex. App. Fort Worth 2019). Argonaut also argues that because the Indemnity Agreement vested it as a surety with exclusive authority to determine whether any claim under the bonds should be settled, and for how much, that it could not have breached the agreement by paying claims in the manner alleged by the counterclaims.

The Indemnity Agreement was signed by all Indemnitors and Argonaut performed under the Indemnity Agreement. It is true that the agreement gave Argonaut the sole discretion whether to settle claims. However, in the light most favorable to the Defendants the plain language of the contract indicates that Argonaut owed the indemnitors certain duties. For instance, the contract also provided that "in any accounting between the Surety and the Indemnities, the Surety [would be] entitled to charge for any and all disbursements made by it in good faith." Dkt No. 45 Exhibit A Indemnity Agreement, ¶ 2. The Agreement defines good faith as "any and all payments, losses attorneys' fees, and other expenses except those made with deliberate and willful malfeasance." *Id.* at ¶3. Argonaut was also required to provide notice to the surety any time a claim was made against the Bonds at least five (5) business days before payment of such demand was due. *See* Dkt No. 45 Exhibit A Indemnity Agreement at ¶ 14. Additionally, the contract provided that "an

itemized statement of losses sworn to by… a representative of the Surety" was to be provided to the Indemnitors. Dkt No. 45 Exhibit A Indemnity Agreement at ¶2. In the Answer and Counterclaim the Indemnitors contend that Argonaut engaged in "willful, malicious conduct" that was "taken with reckless disregard of the rights of the Indemnitors and that Argonaut paid claims without proper investigation, authentication, or adherence to the contractual requirements". Dkt. No. 38, at ¶ 33. Taking the allegations of the counterclaim in a light most favorable to the Indemnitors, as required, this court concludes that a claim has been stated for Argonaut's potential breach of the Indemnity Agreement either by lack of good faith in payment of the bonds, improperly investigating the validity of the claims, or by not furnishing a notice and an itemized statement to Indemnitors before payment as required by the Indemnity Agreement. Therefore, to the Motion is DENIED as to these claims.

## Conclusion

For the reasons set forth above, Argonaut's Motion to Dismiss, Dk. No. 45, is hereby GRANTED in part and DENIED in part.

**IT IS SO ORDERED** on this 16th day of September 2025.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE